# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALEX R. FREW, | : |
| Petitioner, | : |
| v. | : Civil Action No. 3:12-CV-1600 |
| | : (Judge Mariani) |
| DAVID VARANO, *et al.*, | : |
| Respondents. | : |

## MEMORANDUM

**I.   Introduction**

Petitioner Alex R. Frew ("Petitioner" or "Frew") initiated the above *pro se* action by filing a Petition for Writ of Habeas Corpus ("Petition") under the provisions of 28 U.S.C. § 2254. (Doc. 1). Named as Respondents are SCI Coal Township Superintendent David Varano; the Attorney General of the Commonwealth of Pennsylvania; and the Pennsylvania Board of Probation and Parole. (*Id.*). Frew challenges, *inter alia*, the application of Act of July 5, 2012, P.L. 2050, No. 122, amending Titles 18 (Crimes and Offenses), 42 (Judiciary and Judicial Procedure) and 61 (Prisons and Parole) of the Pennsylvania Consolidated Statutes, to his sentence. (*Id.*).

For the reasons discussed below, the Court will dismiss the Petition for failure to exhaust and procedural default. Additionally, Frew's motion to stay will be denied.

1

## II. Background

On May 29, 2008, Frew was sentenced by the Court of Common Pleas of Montour County, Pennsylvania, to an aggregate term of seven (7) to twenty (20) years. (Doc. 1, p.1). A motion for modification was filed by Frew on June 9, 2008, but that motion was denied. (*Id.*).

On July 5, 2012, subsequent to the imposition of Frew's sentence, Act 122 of 2012 was enacted. Respondent, in its Answer to the instant Petition, summarized Act 122 as follows:

> Among other matters, the act amended title 61 of the Pennsylvania Consolidated Statutes (Prisons and Parole) to eliminate the authority of the Department of Corrections to establish pre-release centers in the state or to transfer prisoners from correctional institutions to pre-release centers. Act 122, § 6. Instead of pre-release programs, the General Assembly established an extensive alternative program to be known as the Safe Community Reentry Program. [*Id.* at § 13]. The new Safe Community Reentry Program is intended to "reduce recidivism and ensure the successful reentry of offenders into the community." *Id.* Offenders who are eligible for participation in the Safe Community Reentry Program are those offenders from a state correctional institution who are released or paroled from incarceration, excluding inmates serving a sentence of life imprisonment or death. *Id.*

(Respondent's Answer to Petition, Doc. 12, p. 3; *See also* Doc. 12-2 "Senate Bill 100").

On July 26, 2012, John Wetzel, Secretary of the Department of Corrections ("DOC"), sent a memorandum to all inmates notifying them that pre-release would no longer apply to inmates incarcerated by the DOC. (Doc. 12-3, "John Wetzel Memorandum"). The memorandum also noted that the DOC would continue to send those inmates eligible for pre-release programming to such programs until December 12, 2012, provided that the

2

inmate's minimum date on their sentence did not extend beyond May 31, 2012. (*Id.*). Because Frew's minimum date was February 8, 2015, he is not eligible for pre-release programming. (Doc. 12, p. 4).

On August 1, 2012, Frew filed a Petition for Writ of Habeas Corpus in the Court of Common Pleas of Montour County, Pennsylvania. See *Commonwealth v. Frew*, CP-47-CR-0000057-2008, *et seq.* On August 2, 2012, the petition was denied. (Doc. 1, App. C "Order of Court – Montour County"). In this denial, the Court of Common Pleas for Montour County explained that the Pennsylvania Board of Parole and Probation had jurisdiction. *Id.* Petitioner did not appeal this decision to the Superior Court of Pennsylvania.

On August 15, 2012, Petitioner filed the instant habeas Petition. (Doc. 1). In his Petition, Frew argues that the application of Senate Bill 100 to his sentence without a hearing or without providing him with compensation violates his right to Due Process and the Ex Post Facto Clause. (*Id.* at p. 1-2, 5-6.) He also argues that the elimination of his pre-release eligibility amounts to an increase in his sentence and therefore violates the Double Jeopardy Clause. (*Id.* at 5.) Frew submits that he lacks a state remedy and that the exhaustion requirement therefore should be excused. (*Id.* at 2-3.) Alternatively, Frew argues that this Court should stay this case while he exhausts his remedies. (*Id.* at 4).

On September 25, 2012, a show cause order was issued, directing that a response to the petition be filed within twenty-one (21) days. (Doc. 6). After two enlargements of time (Docs. 8, 10), a response to the petition was filed on November 21, 2012. (Doc. 12). In

3

their Response, Respondents argue that Frew's Petition should be denied. Respondents explain that because Frew failed to seek appellate review of the decision of the Court of Common Pleas of Montour County, he has now procedurally defaulted on his claims. (*Id.*). Respondents additionally note that Frew should have sought administrative review by the Parole Board in order to properly exhaust a claim involving a determination of the Board. (*Id.*).

On January 25, 2013, Frew filed a traverse. (Doc. 16). In his traverse, Frew reiterates that the Commonwealth has failed to provide him with a remedy and that the loss of pre-release has violated his rights. (*Id.*).

## III. Discussion

### A. Exhaustion and Procedural Default

Habeas corpus relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant. See 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. See *Warts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the

4

State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Respect for the state court system requires that the petitioner demonstrate that the claims in question have been "fairly presented to the state courts." *Castille v. Peoples*, 489 U.S. 346, 351 (1989). To "fairly present" a claim, a petitioner must present its "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir.1999); *see also Nara v. Frank*, 488 F.3d 187, 197–98 (3d Cir.2007) (recognizing that a claim is fairly presented when a petitioner presents the same factual and legal basis for the claim to the state courts). While the petitioner need not cite "book and verse" of the federal Constitution, *Picard v. Connor*, 404 U.S. 270, 278 (1971), he must "give the State 'the opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" before presenting those claims here, *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (*quoting Picard*, 404 U.S. at 275).

When properly exhausting a matter involving a determination of the Pennsylvania Board of Probation and Parole, the petitioner must first challenge the Board's decision by filing an administrative appeal, *see* 37 Pa. Code § 73.1(b)(1), then by an appeal to the Pennsylvania Commonwealth Court, *see* 42 Pa. C.S. § 763(a); *St. Clair v. Pennsylvania Board of Probation & Parole*, 493 A.2d 146 (Pa.Commw.1985), and then by a petition to the Pennsylvania Supreme Court for allowance of appeal. *See Fells v. Pennsylvania Bd. Of Probation and Parole*, 2012 WL 727904, *3 (M.D. Pa. 2012).

As is evident by the record, Frew's only action in the Pennsylvania court system in regards to this claim was to file a "Petition for Writ of Habeas Corpus Modification of Sentence Nunc Pro Tunc" in the Court of Common Pleas of Montour County. (Doc. 1, App. A "Petition for Writ Habeas Corpus Modification of Sentence Nunc Pro Tunc"). Petitioner has failed to exhaust the claims in his Petition because he has failed to invoke any of the administrative remedies available for review of a Parole Board decision.

Moreover, even if Frew was not required to invoke the available administrative remedies before the Parole Board, he was still required to exhaust the available state court appellate review of the decision of the Court of Common Pleas. Frew failed to appeal the Montour County Court's order dismissing his case for lack of jurisdiction to the Superior Court of Pennsylvania, see 42 Pa. C.S. §§ 724, 742, 762., and, as such, Frew failed to exhaust his claims.

Frew's failure to exhaust his federal claims in the appellate courts of Pennsylvania presents a procedural default that now bars consideration of those claims in federal court by the filing of a petition for writ of habeas corpus. *Cristin v. Brennan*, 281 F.3d 404, 410 (3d Cir.), *cert. denied*, 537 U.S. 897 (2002). The doctrine of procedural default bars federal habeas relief when a state prisoner has defaulted on his federal claims in state court pursuant to an independent and adequate state procedural rule. *Id.* For example, failure to present federal habeas claims to the state courts in a timely fashion results in procedural default. *See O'Sullivan*, 526 U.S. at 848 (*citing Coleman v. Thompson*, 501 U.S. 722, 731–

32 (1991)). Like a state prisoner who has failed to exhaust his state remedies, "a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 732. The doctrine of procedural default therefore ensures that a state prisoner cannot evade the exhaustion requirement of § 2254 by defaulting his federal claims in state court. *Id*.

However, a federal habeas court can review the merits of procedurally defaulted claims if the petitioner demonstrates either cause for the procedural default and actual prejudice, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless*, 172 F.3d at 260; *Coleman*, 501 U.S. at 750–51; *Caswell v. Ryan*, 953 F.2d 853, 861–62 (3d Cir.1992). To demonstrate "cause" for a procedural default, the petitioner must show that some objective external factor impeded petitioner's efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate "actual prejudice," the petitioner must show "not merely that the errors ... created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218,

7

224 (3d Cir.2001). The miscarriage of justice exception applies only in extraordinary cases where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bouslev v. United States*, 523 U.S. 614, 623 (1998). To establish such a claim, a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Further, actual innocence "does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." *Id*. at 329.

Frew's only argument against dismissing his Petition on the basis of exhaustion and procedural default is that Pennsylvania has provided him with no remedy and that exhaustion is futile. (Doc. 1, 16). However, as the exhaustion procedures outlined above show, Pennsylvania has provided Frew with a specific forum and process by which to seek relief. Additionally, the Court does not find Petitioner's argument persuasive as Frew provides no proof that he tried to exhaust his claims beyond the one petition filed in Montour County. More importantly, Frew has failed to allege either cause or prejudice for his procedural default, nor has he demonstrated that our failure to review this claim will result in a fundamental miscarriage of justice as that term has been delineated in the case law governing Petitioner's claim.

## B.   Motion to Stay

In support of his request for a stay Frew states, "If this Honorable Court would disagree with his argument for exhaustion, he argues or moreso respectfully requests that the Court might grant him a STAY, in light of the confusion caused by the empirical evidence that is Appx'B indicating the opposing party's reluctance to allow for a "proper" court filing..." (sic) (Doc. 1, p. 4).

The stay and abeyance procedure holds a federal habeas petition pending exhaustion of state remedies by the petitioner.[1] *Rhines v. Weber,* 544 U.S. 296 (2005). While granting a stay and abeyance is an available procedure, it is not a preferred course of action. *Id.* Because a "stay and abeyance" procedure, if used too frequently, can undermine the policies favoring prompt and orderly resolution of state habeas petitions, the Supreme Court held that "stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Id.* at 277. However, the Supreme Court also did not limit the authority to grant a stay to specific scenarios; rather, the district court must determine whether the petitioner "satisfied the three requirements for a stay as laid out in *Rhines*: good cause, potentially meritorious claims, and a lack of intentionally dilatory litigation tactics." *Heleva v. Brooks,* 581 F.3d 187, 192 (3d Cir. 2009).

---

[1] The Third Circuit has held that *Rhines* is not limited only to mixed petitions containing both exhausted and unexhausted claims. *See Heleva v. Brooks,* 581 F.3d 187, 192 (3d Cir. 2009) (considering a habeas petition that contained only unexhausted claims and noting that "[t]he full range of circumstances in which a habeas petitioner is eligible for stay-and-abeyance is not yet clear," and that a petitioner may merit a stay "even where only unexhausted claims are at issue.").

9

The record before the Court fails to demonstrate good cause for Petitioner's failure to exhaust his claims. The Montour County Court denied Frew's petition, stating that the Pennsylvania Board of Probation and Parole had jurisdiction. (Doc. 1, App. C). Frew failed to present his claim to the Pennsylvania Board of Probation and Parole despite this ruling. Frew also failed to file an appeal of the Montour County Court's order to the Superior Court of Pennsylvania. As such, the Court finds that there was not a lack of remedies, as Frew alleges. Frew failed without good cause to pursue any remedy beyond the Court of Common Pleas' decision dismissing his Petition. This suggests Frew's use of intentionally dilatory litigation tactics. More importantly, Frew's claim is without merit. While Frew alleges his due process rights have been violated because he is no longer eligible for pre-release[2], federal courts have consistently held that Pennsylvania has not created an enforceable liberty interest in parole or rehabilitative pre-release programs.[3] Accordingly, the Court will deny the motion to stay.

---

[2] Frew alleges that the availability of pre-release was a part of his plea bargain. (*See* Doc. 16). However, he has offered no evidence in support of this allegation and did not exhaust this argument in state court.

[3] *See e.g., Rambert v. Shannon*, 2012 WL 337893, *3 (M.D. Pa. 2012); *Pratt v. Fayette County*, 2011 WL 6116456, *7 (W.D. Pa. 2011); *Jones v. Beard*, 2011 WL 3611470 (E.D. Pa. 2011); *McFadden v. Lehman*, 968 F.Supp. 1001, 1004 (M.D.Pa.1997) (Pennsylvania has not created an enforceable liberty interest in parole, rehabilitative pre-release programs, or in therapy programs.); *Rodgers v. Parole Agent SCI–Frackville, Wech*, 916 F.Supp. 474, 476 (E.D.Pa.1996); *McCrery v. Mark*, 823 F.Supp. 288 (E.D.Pa.1993); *Rogers v. Pennsylvania Bd. of Probation and Parole*, 555 Pa. 285, 724 A.2d 319 (1999) (holding that the grant of parole for Pennsylvania prisoners is nothing more than a possibility; it merely constitutes favor granted by the state as a matter of grace and mercy); *Tubbs v. Pennsylvania Bd. of Probation and Parole*, 152 Pa.Cmwlth. 627, 620 A.2d 584, 586 (Pa.Commw.Ct.1993) (stating, "it is well settled under Pennsylvania law that a prisoner has no constitutionally protected liberty interest in being released from confinement prior to the expiration of his sentenced maximum term ... the [Board] makes

## IV. Certificate of Appealability

When a district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, a certificate of appealability should only issue if (1) the petition states a valid claim for the denial of a constitutional right, and (2) reasonable jurists would find it debatable whether the district court was correct in its procedural ruling. *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). In this case, reasonable jurists could not disagree that the instant petition is procedurally defaulted.

## V. Conclusion

For the reasons discussed above, the Petition for Writ of Habeas Corpus will be denied. (Doc. 1). Petitioner's motion to stay will be denied. (*Id.*). An appropriate order will follow.

/s/ Robert D. Mariani
Robert D. Mariani
United States District Judge

12/30/13

---

each decision on a case by case basis, and prisoners have no guarantees that parole will ever be granted"), *appeal denied.* 536 Pa. 635, 637 A.2d 295 (Pa.1993).